IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE A. HEATHERINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:05-cv-0202 |
| | ) | |
| JO ANN B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) | Judge Thomas M. Hardiman |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff George Heatherington (Heatherington) brings this action pursuant to 42 U.S.C.

§405(g) of the Social Security Act (Act), seeking review of the final determination of the

Commissioner of Social Security (Commissioner) denying his application for disability insurance

benefits (DIB).  This matter is before the Court on the parties' cross motions for summary

judgment under Rule 56 of the Federal Rules of Civil Procedure based on the record developed at

the administrative proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the

memoranda of the parties and the entire record, the Court finds the ALJ's decision is supported

by substantial evidence.  Therefore, plaintiff's motion for summary judgment will be denied and

the Commissioner's determination will be affirmed.

## II.    Procedural History

Plaintiff Heatherington is a 66 year-old man who was 59 years-old at the time his application for DIB was filed on September 25, 1998. (R. 38, 213). Heatherington claimed disability as of February 28, 1982 because of mental retardation and lumbar strain syndrome. (R. 15). His claim was denied first by the State agency and then in a Hearing Decision issued on December 3, 1999 by ALJ James Bukes. (R. 40-42). The Appeals Council vacated the December 3, 1999 decision of ALJ Bukes and remanded the case because the original record had been lost. (R. 71-72).

On June 22, 2004, ALJ Bukes conducted a supplemental hearing in Pittsburgh, Pennsylvania at which Heatherington and vocational expert (VE) Charles Cohen, Ph.D. testified. (R. 209-227). Heatherington was represented at the hearing by Charles T. Pankow, Esq.

On September 24, 2004, the ALJ found that although Heatherington suffered from a severe impairment of mild mental retardation, he was not disabled under the Act on or before June 30, 1987 – the date he was no longer insured for DIB – because he had the residual functional capacity (RFC) to perform work at all exertional levels so long as the work was limited to the performance of short, simple routine, repetitive instructions. (R. 15-26). The Appeals Council found no reason to review the September 24, 2004 decision and denied Plaintiff's request for review on January 7, 2005, making the ALJ's opinion the final decision of the Commissioner. (R. 6-9).

## III.   Statement of Facts

Heatherington completed only the ninth grade.  His transcript reflects that he struggled

greatly in school, although he did not attend any special education classes.  (R. 101, 112).  For

twenty-seven years, from 1955 until 1982, Heatherington worked at the Imperial Glass

Corporation in an unskilled position that required heavy exertion.  (R. 96, 214-15, 225).  As a

laborer at Imperial's factory, Heatherington's work involved short, repetitive instructions,

required walking and lifting ten pounds regularly, and sometimes required him to lift iron "punch

bowls" that weighed up to ninety pounds.  (R. 214).

On May 24, 1971, Heatherington fell at work and suffered an acute traumatic myofascial

sprain of the lumbo pelvic area.  (R.116).  Nevertheless, he continued to work at Imperial Glass

until February 28, 1982, when he ceased working because of back pain and problems breathing.

(R. 85, 217).  Thus, Heatherington claims an onset date of February 28, 1982.

Although he had no recollection of it, the record reflects that in 1988 Heatherington

performed janitorial work briefly at the Sands Hotel and Casino in Atlantic City, New Jersey,

earning over $900.  (R. 85, 93).

On October 27, 1986, over four years after his alleged onset date, Heatherington

underwent an x-ray consultation of the lumbar spine conducted by chiropractor Harvey W.

Waller, D.C.  (R. 151).  In conjunction with this consultation, roentgenologist J.R. Bestgen, D.C.,

stated the following impression:

> 1. Approximately sixteen millimeter leg deficiency right side with an inferiority
> of the pelvis and sacrum on the right and a slight compensating right lateral
> curvature sacral base L-1, rotation to the right of the midline L-1/L-2;
> 2. Hyperextension of the lumbar lateral curvature;
> 3. Anterior lateral protrusion of the L-2, L-3 and L-4 disk contents; and

3

4.  Minimal arthrosclerosis, abdominal aorta.

(R. 151).  Heatherington received conservative care for his injuries from his chiropractor, Harvey

Waller, D.C.  During the course of his treatment, Dr. Waller noted fluctuation in Heatherington's

condition from steady improvement to occasional exacerbation.  (R. 116, 121-139, 141-149).

On November 7, 1986, Dr. Waller prepared a report for the Ohio Bureau of Worker's

Compensation/Industrial Commission opining that Heatherington temporarily would be totally

disabled because he exacerbated the back injury he sustained on May 24, 1971.  Dr. Waller

estimated the disability to last from October 20, 1986, to February 2, 1987.  (R. 150).  On

December 16, 1986, Dr. Waller reaffirmed his prior opinion that Heatherington would be able to

return to work in February 1987.  He also noted a diagnosis of acute lumbar and lumbosacral

sprain, probable disc lesions, radiculitis, myofascitis, and bilateral femoral neuralgia.  (R. 168).

On February 18, 1987, Heatherington met with Dr. W. Jerry McCloud regarding his back

problems.  Dr. McCloud found Heatherington to have no gait abnormalities and his neurological

and radicular findings were normal.  (R. 116).  After indicating that Heatherington was being

"moderately deceptive" in his complaints, Dr. McCloud opined that he could work despite his

injury.  (R. 116).

Heatherington met with Dr. Waller again on April 16, 1987, at which time his work

function was limited to avoiding strenuous work activity.  (R. 140).  After more complaints of

discomfort, in June of 1987 Dr. Waller referred Heatherington to a neurosurgeon, but he declined

to go because he could still "get along this way."  (R. 128).

On December 22, 1987, Dr. Fred J. Payne took x-rays of Heatherington, which revealed

slight weakness and tenderness in his lumbar spine, but the examination was otherwise normal.

4

(R. 118-119).   Dr. Payne diagnosed a possible lumbar disc herniation and proceeded with a lumbar myelogram and follow-up CT scan of Heatherington's lumbar spine.  Both tests were normal, so Dr. Payne found no neurosurgical cause for Heatherington's "marked physical impairments" which Dr. Payne noted were "clearly suspect." (R. 120).

Documents from April 8, 1988, showed that Heatherington had a verbal I.Q. score of 64, a performance I.Q. score of 65, and a full-scale I.Q. score of 62.  (R. 22).  In light of these scores and his extensive work history, the ALJ found that Heatherington's RFC was limited to short, routine, simple, repetitive instructions.  (R. 25).

In his appeal, Heatherington notes that Dr. Michael Catena also assisted him with his medical needs, including the need for a prescription inhaler to combat his asthma.  (R. 197).  However, Dr. Catena makes no mention of Heatherington's back problems until February of 1997.  (R. 196-208).  Because these opinions date some ten years after Heatherington's date of insurance, they are immaterial to the question of his ability to work as of June 30, 1987.

As a result of the foregoing, the ALJ concluded that Heatherington "was not under a disability as defined in the [Act] at any time prior to the expiration of his insured status on June 30, 1987."  (R. 26).

Based on the ALJ's determination that Heatherington suffered from mild mental retardation, but did not have any other physical limitation other than those imposed on his functional capacity by his mental handicap, a vocational expert (VE) testified that he could perform the past work of a laborer or janitor.  The ALJ asked the VE to assume an individual who:  could not read or write; would be limited to short, simple, routine, repetitive instructions; and would be limited to light work.  (R. 225-26).  The VE testified that an individual with those

limitations could work in light packing (7,000 jobs nationwide), light assembly (1,900,000 jobs nationwide), or light cleaning (2,000,000 jobs nationwide).  (R. 225-26).

## IV.    Standards of Review

Judicial review of the Commissioner's final decision on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3).[2]  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983).  The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .

42 U.S.C. §405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. §1383(c)(3).

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

"substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d

at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841

F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred

to this standard as "less than a preponderance of the evidence but more than a mere scintilla."

*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't*

*of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will

not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict

created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993),

*quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard

allows a court to review a decision of an ALJ, yet avoid interference with the administrative

responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.

1983).

In making this determination, the district court considers and reviews only those findings

upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by

supplying additional findings from its own independent analysis of portions of the record which

were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir.

2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the

relevant and probative evidence, attempted to rectify this error by relying on medical records

found in its own independent analysis, and which were not mentioned by the ALJ. This runs

counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support the ultimate findings. *Stewart*, 714 F.2d at 290. In making a determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain the reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set her own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the

Commissioner applies a five-step analysis. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See*

*Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will
> be denied . . . . In *step two*, the Commissioner must determine whether the
> claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the
> claimant fails to show that her impairments are "severe," she is ineligible for
> disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to
> preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not
> suffer from a listed impairment or its equivalent, the analysis proceeds to steps
> four and five. *Step four* requires the ALJ to consider whether the claimant
> retains the residual functional capacity to perform her past relevant work.
> 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an
> inability to return to her past relevant work . . . .
>
> If the claimant is unable to resume her former occupation, the evaluation
> moves to the final *step [five]*. At this stage, the burden of production shifts to
> the Commissioner, who must demonstrate the claimant is capable of performing
> other available work in order to deny a claim of disability. 20 C.F.R.
> § 404.1520(f). The ALJ must show there are other jobs existing in significant
> numbers in the national economy which the claimant can perform, consistent
> with her medical impairments, age, education, past work experience, and
> residual functional capacity. The ALJ *must analyze the cumulative effect of all
> the claimant's impairments* in determining whether she is capable of performing
> work and is not disabled. The ALJ will often seek the assistance of a vocational
> expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in

20 C.F.R. No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

    (2) in the event that claimant suffers from a less severe impairment, he or she will be

deemed disabled where the claimant is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461,

*citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant

first must demonstrate the existence of a medically determinable disability that precludes him or

her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*,

823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the

burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical

limitations, age, education and work experience, he or she is able to perform substantial gainful

activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842

F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v.*

*Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

    Where a claimant has multiple impairments which, individually, may not reach the level

of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must

consider all of the claimant's impairments in combination to determine whether, collectively,

they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must

consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v.*

*Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the

'[Commissioner] shall consider the combined effect of all of the individual's impairments

without regard to whether any such impairment, if considered separately, would be of such severity'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923.

      Section 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

      Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for the decision, and specifically explain why a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

      If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

      Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant

11

from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834

F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984);

*Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403,

409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective

description of inability to perform even light or sedentary work when this testimony is supported

by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433

(3d Cir. 1999), *relying on Dobrowolsky.* When a medical impairment that could reasonably

cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the

pain or symptom, and the extent to which it affects the individual's ability to work. This

evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately

stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R.

§ 404.1529(c) (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a

conclusion must be indicated in the decision. *See Cotter*, 642 F.2d at 705. The United States

Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other

symptoms are alleged, the determination or decision rationale must contain a thorough discussion

and analysis of the objective medical and the other evidence, including the individual's

complaints of pain or other symptoms and the adjudicator's personal observations. The rationale

must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical

explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social

Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical

12

evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. Although "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1070-71, *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)."

## V.    Discussion

### A.    Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

13

citations omitted).  The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion.  *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ "must 'explicitly' weigh all relevant, probative and available evidence . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition . . . .  The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."  *Adorno*, 40 F.3d at 48 (citations omitted).  *See also Fargnoli*, 247 F.3d at 42-43 (when the ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit . . . .").

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling.  *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling.  20 C.F.R. §404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled.  We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other.  The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability.  *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and state the circumstances in which an opinion of a treating source is entitled to "controlling weight."  20 C.F.R. §404.1527(b), (d) (2002).[3]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they

---

[3] Subsection (d) states: "How we weigh medical opinions.  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion."  20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight.* When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. §404.1527(d)(2) (2002) (emphasis added).

15

always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored . . . ." SSR 96-5p, Policy Interpretation. Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

---

[4] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

16

Finally, a medical opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. §404.1527 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. §404.1527 (d)(1-6).

B.      State Agency Consultants

Medical consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical . . . consultants or other program physicians . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. §404.1527 (f)(2)(i). *See also* SSR 96-6p: Titles II and XVI:  Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1.  Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.  2.  Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

17

C.     Application

Plaintiff argues on appeal that the ALJ erred when he found Heatherington not disabled at step four of the sequential process because his back disorder did not amount to a severe impairment sufficient for him to qualify for DIB is not supported by substantial evidence. Pl. Br. at 7. Specifically, Heatherington alleges that his medical records, when combined with the *de minimis* legal standard, indicate that he suffered from a severe impairment. Pl. Br. at 9. When his severe impairment is combined with his mental handicap, Heatherington asserts that he is qualified for DIB under Listing 12.05C. Pl. Br. at 10. Thus, his appeal rises or falls on the question of whether substantial evidence exists in the record to support the ALJ's finding that Heatherington's back impairment was not severe.

To be eligible for DIB under Listing 12.05C, Heatherington must prove the existence of mental retardation prior to age 22 by producing a valid IQ score between 60 and 70 and by producing evidence of another impairment that imposes another additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.05C. Although his argument focuses on the severity of his back impairment, there is a question regarding whether Heatherington has satisfied the first prong of Listing 12.05C. The record does not reflect that his IQ was tested before age 22. Moreover, the ALJ correctly noted that Heatherington attended regular classes in school, dropped out of school because he was needed at home, maintained employment for decades, obtained a driver's license through normal means, and married three times. (R. 22-23). In light of the foregoing, the ALJ did not err in questioning the validity of the IQ scores. Nevertheless, the ALJ gave Heatherington the benefit of the doubt and concluded that his IQ scores were sufficient evidence to meet the first prong of Listing

18

12.05C. (R. 22-23). Nevertheless, the ALJ found that Heatherington failed to meet that Listing because he did not suffer from a "coincident physical or mental impairment." (R. 23). The Court turns now to that question.

It first should be noted that the record demonstrates that from the date of his initial accident in 1971 through 1982, Heatherington continued working at his glass factory job. (R. 96, 214-17, 225). The ALJ accurately noted that there was "no evidence of physical therapy, a medication, regimen, steroid injections, or surgical intervention." (R. 18). Moreover, as of June 1987, Heatherington declined the recommendation of his chiropractor that he undergo a neurosurgical evaluation. (R. 128). Perhaps even more telling, Heatherington claims an onset date of February 28, 1982 but the record is devoid of even chiropractic treatment notes until October 27, 1986, over four years after the alleged disability. (R. 151). The record reflects that his first visit to a medical doctor for treatment of his disabling injury was not until February 18, 1987. (R. 116).

In addition to the substantial temporal gap in the record, the ALJ cited Dr. McCloud's opinion that Heatherington: (1) had a normal examination; (2) was being moderately deceptive in the presentation of his subjective symptoms; and (3) was not precluded from work. (R. 18-19, 24, 116-117). Similarly, the ALJ noted Dr. Payne's opinion that Heatherington: (1) had normal objective studies; (2) had a normal physical examination, except for slight weakness in the lower extremities; (3) was not credible because his self-described symptoms regarding his back injury were "clearly suspect;" and (4) should not be scheduled for follow-up appointments because he had no neurological cause for his alleged symptoms. (R. 18-20, 24, 118-120). The record amply supports all of the foregoing findings by the ALJ. Accordingly, the ALJ did not err in concluding

that Heatherington did not suffer from a severe impairment.

Finally, Heatherington argues, albeit briefly, that the ALJ erred by failing to apply Rule 201.17 of the Medical-Vocational Guidelines (Grids). Pl. Br. at 10-11. This argument must be rejected summarily because the Grids do not apply to cases, such as this one, where the ALJ makes a finding of no disability at step four of the sequential process. *See* 20 C.F.R. 404, Subpt. P, App. 2, §200.00 ("The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work).

## VI.    Conclusion

The Court has reviewed the ALJ's findings of fact and decision and determines that the ruling is supported by substantial evidence. Accordingly, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.

January **31**, 2006

Thomas M. Hardiman
United States District Judge

20